**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Case No. 21-CR-00667-FYP-1** |
| **v.** | ) | |
| | ) | |
| **CARA HENTSCHEL,** | ) | |
| | ) | |
| **Defendant** | ) | |

<u>**SENTENCING MEMORANDUM**</u>

Cara Hentschel, through counsel, moves the Court to impose a sentence of 24-months' probation, sixty hours of community service and $500 restitution because such a sentence is sufficient punishment for her role in the events that transpired at the Capitol on January 6, 2020. If the Court is inclined to impose a split sentence as requested by the government, Ms. Hentschel requests a home-detention sentence so she may maintain gainful employment.

**I. Introduction**

Ms. Hentschel does not dispute what transpired at the Capitol on January 6, 2020, and agrees that as an individual, she bears responsibility for the collective actions of the mob that day. On January 6, Ms. Hentschel initially intended only to attend the "Stop the Steal" rally because she honestly believed the election was stolen, as do many people to this day.[1]

She attended the rally and marched to the Capitol dressed for warmth, wearing a "TRUMP" stocking cap, winter coat and jeans, unlike those who came prepared for confrontation wearing helmets, goggles and tactical vests. She marched to the Capitol,

---

[1] For example, in 17 of the 27 states holding elections this year for secretary of state, at least one Republican candidate is running on the claim that the 2020 election was illegitimate. Charles Homans, *How "Stop the Steal" Captured the American Right*, N.Y. Times, July 19, 2022 (available at www.nytimes.com/2022/07/19/magazine/stop-the-steal.html ).

encouraged by President Trump himself, but took her protest beyond acceptable bounds into the Capitol Rotunda where she took photos and walked with the crowd for about eight minutes[2] before leaving.  Although she, and her co-defendant, do not remember seeing Capitol police at the doors where she entered the Rotunda, she knows the danger to them was real and was made possible by the mob of which she was a part.

The government is understandably critical of Ms. Hentschel's actions and her social media posts bragging about her participation in the Capitol riot.   But her social media posts about the riot stopped a few days after the riot, and to counsel's knowledge, have not resumed. And while Ms. Hentschel does not deny the role she played as a part of the mob, as an individual, she did not destroy property or engage in violent behavior.

When discussing her decision to enter the Capitol, the government asserts that Ms. Hentschel "falsely told FBI agents that she did not have a choice in the matter." Doc. 43 at 24. Counsel was present for Ms. Hentschel's interview with the only FBI agent to interview her and recalls that Ms. Hentschel readily admitted that she had a choice about whether to enter the Capitol, but there were so many people behind her, she *felt* it was impossible to turn around.  Ms. Hentschel told the FBI agent her actions were wrong, and she knew it.

Ms. Hentschel reflected on her conduct and is remorseful.  In her allocution statement (Exhibit D1), she writes that she is ashamed of her actions and acknowledges she should be held accountable.  She writes:

---

[2] There is a slight discrepancy between the PSR timeline (PSR ¶ 14) and the Government's timeline which indicates Ms. Hentschel entered the Rotunda at 2:43 and exited at 2:51 p.m. (Doc. 43 at 11 – 15).

The events that took place on January 6th are nothing short of horrifying.  The fact I was there is extremely embarrassing and I'm very ashamed that I went inside the Capitol that day.  After seeing the footage, my heart breaks for the Capitol police who risked their lives that day, and even more for all the lives that were lost and effected by this.  There is absolutely no excuse, and I do believe I should be held accountable.  I now understand that being an American means honoring the Constitution and laws and conducting myself is a way that honors the principles that govern us.  I will never violate those principles again.

Whether her remorse is viewed skeptically is beyond her control, but since her arrest, Ms. Hentschel has done what she can to demonstrate respect for the government by pleading guilty and abiding by the conditions of release.

## II. The Statutory Sentencing Factors – 18 U.S.C. § 3553(a)

Ms. Hentschel disagrees with the government's argument that the statutory sentencing factors warrant a split sentence of three-months' incarceration followed by three-years' probation, sixty hours of community service and $500 restitution.  Although Ms. Hentschel requests a shorter 24-month term of probation, her main disagreement concerns the government's recommendation for a three-month sentence of incarceration.

### A. History and Characteristics

Ms. Hentschel is gainfully employed and spends her free time with family and friends as most people do.   Since August 2019, she has maintained employment at Gold Mountain Communications in Springfield, Missouri where she excels as an employee.  (PSR ¶ 62).  The Sales Director for Gold Mountain Communication wrote:

3

My first interaction with Cara was her coming in early on her first week asking to shadow our best employees on her own time to learn quickly and be the best she could be. She has continued the hard working, driven attitude since then. I know her to be on time, ethical, and is an overall pleasure to be around. She is always willing to help others and gives of herself every day without asking for anything in return. She consistently excelled at every position and campaign she has been a part of and as of this writing, she is our number one performing sales advisor in our entire company.

(Letter of Chad Honeycutt, Exibit D2). Ms. Hentschel is concerned that a sentence of incarceration will disrupt the progress she has made at work. For this reason, Ms. Hentschel requests a sentence of home detention as a substitution for a sentence of imprisonment should the Court decide incarceration is warranted.

Ms. Hentschel's path to a productive life was difficult after struggling for years with addiction. Her mother, Sandra McElroy Moore, wrote of Ms. Hentschel's struggle and her life since overcoming addiction:

Cara became an addict as a young teenager, a devastating situation for our family. It was horrible for all of us. She tried to get clean, several trips to rehab, trying cold turkey, none of it worked. By the end of her active addiction, she had a lengthy arrest record, it was a parent's worst nightmare.

Thank God, she finally was incarcerated. It saved her life. She came out clean and sober for the first time in her adult life. Since the day she was released, she has straightened out her life and atoned for past mistakes. She immediately joined

4

NA.  She has continued to strive to live life as a productive citizen.  She has held

a good job for several years, and is one of the top employees, frequently winning

honors and awards.  She has gotten married, maintains a lovely home and dearly

loves her stepson, with whom she spends a lot of time.

(Letter of Sandra McElroy Moore, Exhibit D3).

Her criminal history reflects her struggle with addiction.  Her convictions for possession

of a controlled substance, stealing and theft are common among those fighting addiction.

Although the government argues her criminal history warrants a sentence of three months in

addition to probation, her criminal history stands in stark contrast to her life now and illustrates

the magnitude of her recovery.

### B.  Nature and Circumstances of the Offense

Ms. Hentschel did not cause or encourage violence or property damage, a fact conceded

by the government.  (Doc. 43 at 24).    The government argues this should not be considered

mitigating because had Ms. Hentschel engaged in violence, she would face more serious charges.

*Id.*  But even among those who pleaded guilty to the same misdemeanor offense, Ms.

Hentschel's individual conduct is less serious.

For example, Capitol defendant Dawn Bancroft entered the Senate Wing door twice, and

upon exiting the Capitol filmed a selfie video where she said, "we were looking for Nancy to

shoot her in the frinkin' brain, but we didn't find her."  (Case No. 21-cr-00271-EGS, Doc. 33 at

4).  The government offered Ms. Bancroft the same plea agreement and requested a lesser

sentence even though Ms. Hentschel made no such threat to Speaker of the House, Nancy Pelosi.

(Sentencing Table, Doc. 43-1, at 25).  Capitol defendant Nathan Entrekin entered the Capitol

twice, once through the fire door near the Senate Parliamentarian's Office and again at the

Senate Wing door. Entrekin chanted "our house" wearing a costume and carrying a homemade

flag. (Case No. 21-cr-0686-FYP, Doc. 23 at 4). Again, the government offered the

misdemeanor plea agreement (Sentencing Table, Doc. 43-1, at 20).

These examples illustrate that even among those who pleaded guilty to violating 40

U.S.C. § 5104(e)(2)(G), there are varying degrees of mitigating and aggravating facts. The

conduct described in these examples is more aggravating than Ms. Hentschel's conduct because

she did not enter the Capitol more than once, did not voice threats of violence and did not come

dressed in a menacing costume. She entered the Capitol as part of a mob, walked around the

Rotunda, and left without causing damage or threatening violence. Her individual conduct under

these circumstances should be viewed as mitigating.

## III. The Split Sentence Legal Issue

Ms. Hentschel is aware that the appeal in *United States v. James Little* is set for oral

argument for November 2, 2022 (USCA Case No. 22-3018, Doc. 1964028). Mr. Little, a Capitol

defendant, received a split sentence of incarceration and probation on the petty offense

proscribed by 40 U.S.C. § 5104(e)(2)(G). The issue in the appeal is whether federal sentencing

statutes permit the imposition of a dual (split) sentence – imprisonment *and* probation – for a

single petty offense. (USCA Case No. 22-3018, Doc. 1956876, at 11). The government requests

such a sentence in Ms. Hentschel's case, and this court and others agree such a sentence is legal.

*See e.g. United States v. Nathan Entrekin,* 21-cr-00686-FYP, Doc. 34 (45 days' incarceration and

three years' probation); *United States v. Caplinger*, 2022 WL 2045373 (D.D.C. June 7,

2022)(Judge Friedman) *and United States v. Sarko*, 2022 WL 1288435 (D.D.C. April 29,

2022)(Judge Kollar-Kotelly).   To preserve relief should the Court of Appeals decide a split-sentence is illegal, Ms. Hentschel objects to imposing a split-sentence on the grounds raised in the *Little* appeal (a split sentence for a petty offense is illegal under federal law because the petty offense clause of 18 U.S.C. § 3583(b)(3) should be read to prohibit a split sentence under the last-antecedent interpretation).

WHEREFORE Ms. Hentschel prays for an order imposing a sentence of 24-months' probation, sixty hours' community service and $500 restitution.

Respectfully submitted,

*/s/ Michelle M. Law*
**MICHELLE M. LAW, MO Bar #45487**
Assistant Federal Public Defender
901 St. Louis Street, Suite 801
Springfield, Missouri 65806
(417) 873-9022
Attorney for Defendant

September 23, 2022

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of September, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants, and a copy was mailed, via the United States Postal Service, to all non-CM/ECF participants.

*/s/ Michelle M. Law*
**MICHELLE M. LAW**